STATE OF NEW JERSEY (BOROUGH OF SHREWSBURY), PLAINTIFF-RESPONDENT, v. JERSEY CENTRAL POWER & LIGHT COMPANY, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY (BOROUGH OF NEW SHREWS-BURY), PLAINTIFF-RESPONDENT, v. JERSEY CENTRAL POWER & LIGHT COMPANY, DEFENDANT-APPELLANT.

Argued January 5, 1970—Decided March 3, 1970.

Mr. *William T. Osborne* argued the causes for defendant-appellant.

Mr. *Howard A. Roberts* argued the cause for plaintiff-respondent in A–67 (*Mr. John E. Holobinko,* on the brief).

Mr. *Martin M. Barger* argued the cause for plaintiff-respondent in A–78 (*Messrs. Reussille, Cornwell, Mausner & Carotenuto,* attorneys; *Mr. Barger,* on the brief).

The opinion of the court was delivered by

HALL, J. These cases once more involve the question of the effect of local zoning regulations upon public utility

installations. See *In re Application of Hackensack Water Co.,* 41 *N. J. Super.* 408 (App. Div. 1965); *In re Public Service Electric & Gas Co.,* 35 *N. J.* 358 (1961); *In re Monmouth Consolidated Water Co.,* 47 *N. J.* 251 (1966). *Cf. In re Public Service Electric & Gas Co.,* 100 *N. J. Super.* 1 (App. Div. 1968).

The defendant was convicted in the Municipal Courts of the Boroughs of Shrewsbury and New Shrewsbury for violating the zoning ordinances thereof in connection with its erection of a bulk electric transmission line running through the municipalities. The Monmouth County Court affirmed, imposing fines of $100 plus costs in each case. In the Shrewsbury case, the subsequent appeal to the Appellate Division was certified before argument there on application of the defendant, *R.* 2:12–2(a); the appeal in the New Shrewsbury case was certified on our own motion, *R.* 2:12–1. An identical issue is presented in each case.

The stipulated facts should be briefly summarized. The transmission line in question is 6.9 miles long running from a present substation in Colt's Neck to one in Red Bank, carrying conductors of 230,000 and 34,500 volts for ultimate distribution at lower voltages of additional electrical power to customers in a fast growing area. There has been no suggestion that the facility is not a much needed one. It traverses five municipalities. 18,000 feet of it are in Shrewsbury and 12,000 in New Shrewsbury. We understand that generally the line and the supporting structures are located upon or adjacent to a railroad right-of-way. The structures supporting the conductors are H-frames ranging in height from 32 feet to about 149 feet. In addition to the power lines, they are also designed to carry wires for proposed electrification of the railroad.

Under the Shrewsbury ordinance electric transmission lines are not a permitted use anywhere in the borough. Where the line runs on the railroad right-of-way the land is either unzoned or zoned for residential use; where it runs adjacent to the right-of-way, the land lies within an in-

dustrial zone. Most of the frames will exceed the maximum height of structures permitted by the ordinance, by virtue of an amendment adopted about the time construction commenced and obviously passed to affect this particular installation. The ordinance requires a building permit before any structure may be erected, a prerequisite for which, as to certain of the zones involved, is site plan approval by the Planning Board following compliance with performance standards set forth in the ordinance. The local building code excepts electric utility structures from its provisions and contains no specifications for their construction, matters which we understand are quite properly covered by regulations of the Board of Public Utility Commissioners. While the complaints alleged violation of the ordinance without having first obtained a building permit, it is apparent that, because of the use, height and site plan approval provisions, a permit could not issue unless defendant first obtained a variance from the Board of Adjustment.

Under the New Shrewsbury ordinance, electric lines are not a permitted use in the zones through which this line would pass. A building permit and site plan approval are likewise required before erecting a structure. This borough's building code also excepts electric utility structures. The complaint alleged that defendant "did change use of lands for a non-residential use without site plan approval" by commencing erection. Again, apparently site plan approval could not be obtained here without a variance.

*N. J. S. A.* 40:55–50 of the zoning law reads as follows:

"This article ["Zoning"] or any ordinance or regulation made under authority thereof, shall not apply to existing property or to buildings or structures used or to be used by public utilities in furnishing service, if upon a petition of the public utility, the board of public utility commissioners shall after a hearing, of which the municipality affected shall have notice, decide that the present or proposed situation of the building or structure in question is reasonably necessary for the service, convenience or welfare of the public."

Admittedly defendant did not apply for such relief prior to commencement of construction of the line.[1]

Defendant takes the position, purportedly based on this court's opinion in *In re Public Service Electric & Gas Co., supra* (35 *N. J.* 358), that the attempt of the municipalities to apply their zoning ordinances to bulk transmission lines merely passing through the local community to some other place constitutes an effort to regulate the transmission of electrical energy, a field committed to state regulation and beyond local legislative power.[2] It is said that local zoning authority to which *N. J. S. A.* 40:55–50 is applicable can extend only to single buildings or structures having a particular local situs, such as a water tank, *In re Monmouth Consolidated Water Co., supra* (47 *N. J.* 251); *In re Application of Hackensack Water Co., supra* (41 *N. J. Super.* 408), or a railroad freight yard (*New York Central Railroad Co. v. Ridgefield*, 84 *N. J. Super.* 85 (App. Div. 1964)). It therefore contends that it may simply disregard municipal zoning provisions affecting bulk transmission lines and make its own binding decision whether it must apply to the Board of Public Utility Commissioners for exemption under the statutory section.

The local view, on the other hand, is that *N. J. S. A.* 40:55–50 indicates a legislative intention that some local power through zoning regulation exists as to any utility installation, but with the final "say-so" resting in the state agency, subject to judicial review. It urges, therefore, that the burden rests on the utility to proceed before the Board

---

[1] We were advised at oral argument that the utility has, since the County Court affirmances, filed a petition with the Board pursuant to the statute and that the hearing has been held, but that no decision has yet been announced.

[2] We are not here concerned with consumer distribution lines carried on poles or in underground conduits along public streets and roads within a municipality. Specific provisions of the utility law deal with such installations, giving the utility such a right subject, generally speaking, to municipal consent as to designation of the street and the manner of installation and to such reasonable regulations as may be locally imposed. *N J. S. A.* 48:7–1, –2 and –3.1.

pursuant to the statute in every case where a local zoning regulation affects the proposed facility. The municipalities stress that in this way local interests, involving the effect of the proposed installation upon the community environment, can be presented and considered, even though the agency may properly find that the zoning regulation must be subordinated, in whole or in part, to the broader interest of "the service, convenience or welfare of the public." In the instant cases they express concern about the closeness of the route chosen to residential areas in some sections, the adverse aesthetic effect of the height and type of the frames, and safety factors, and probably as well a broad desire that the line be carried underground.

■■ We agree generally with the position of the municipalities. We have no doubt that the legislative scheme puts the initiative upon the utility to petition the Board for relief under *N. J. S. A.* 40:55–50 whenever a municipal zoning provision affects any proposed installation or it is claimed that it does, unless the requirement is a purely ministerial one, as, for example, where a building permit would issue as of course without submission and approval of structural or site plans.[3] Otherwise the utility may be prosecuted for violation of the ordinance. The very language of the section, enacted as part of our original zoning enabling act in 1928, evidences the clear intent that the decision should not be the utility's whether local zoning provisions should apply at all or to what extent, be the proposed facility one which has a fixed local situs or a bulk transmission line merely passing through the municipality. The statutory provision for notice to the municipality and a hearing further shows that local interests are to be con-

---

[3] This is not to say that the utility could not seek a variance or other relief from local agencies. This was the course initially followed by the utility in *In re Monmouth Consolidated Water Co., supra* (47 *N. J.* 251), but without success. The saving of time and expense to all concerned indicates that a utility would be better advised to proceed at once before the Board.

sidered and weighed with the broader public interest in the light of the Board's expertise.

 Nothing we said in *In re Public Service Electric & Gas Co., supra* (35 *N. J.*, at 374–375) was intended to suggest otherwise. We meant no more than to suggest, in discussing a hypothetical zoning ordinance provision which went "to the extent of amounting to attempted local regulation substantially affecting the method of operation and functioning of the utility," such as a prohibition against any overhead electric wires in the municipality, that such a provision might go so far beyond the pale of the local zoning power as to permit the Board of Public Utility Commissioners to completely nullify it for that reason in a proceeding brought by the utility under *N. J. S. A.* 40:55–50.[4] There was not the slightest thought intended that the utility could make that decision on its own and act *ex parte* accordingly.

 In the four cases cited at the beginning of this opinion there was considered at length the broad powers and heavy responsibilities of the Board when it is called to pass upon the applicability of local zoning provisions, as well as the concomitant obligations upon it when municipalities, citizens or consumers petition for an investigation of "any matter concerning any public utility" under *N. J. S. A.* 48:2–19. These need not be repeated in full. Suffice it now in recapitulation merely to say that the Board's obligation is not a perfunctory one; it is called upon to inquire diligently and act positively and affirmatively to properly discharge the duty, implicit in the statute, of ac-

---

[4] Since *N. J. S. A.* 40:55–50 is found in the zoning law, the Board's power over municipal legislation in this general area is limited to zoning ordinance provisions and does not extend to general police power ordinances struck down in *Rockland Elec. Co. v. Montvale*, 104 *N. J. L.* 480 (Sup. Ct. 1928), and *In re Public Service Elec. & Gas Co., supra* (35 *N. J.* at 370–373). Under the present state of the statutory law, it would appear that in such situations the utility can only attack the validity or applicability of the ordinance by a suit in the Law Division in lieu of prerogative writ.

commodating local interests of consequence in the light of the broader public welfare which has to be served and is entitled to primary consideration. This can frequently be done by the Board's imposition, fully within its powers, of reasonable conditions designed to preserve relevant zoning considerations or to apply some, but not all, of local zoning ordinance provisions. While the choice as to location and method of additional facilities rests in the first instance with utility management, we are clear that the Board does have the authority to require modifications, including changes in route, where important local considerations can be given recognition without sacrificing the wider public interest. Certainly the Board can exempt the utility from local building permit and site plan approval requirements where the basis thereof is substantially covered by the Board's own regulations and policies.

The judgments are affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None